**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

---

FRANK P. MARTIN, JR.,

      Plaintiff,

v.                                                          No. CIV 00-516 BB/WWD-ACE

UNITED STATES OF AMERICA,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      THIS MATTER comes before the Court for consideration of Plaintiff's motion to amend his complaint (Doc. 28), and Defendant's motion to dismiss or, in the alternative, for summary judgment (Doc. 30). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the motion to amend the complaint will be granted in part and denied in part, and the summary-judgment motion will be granted as to the one claim presently stated in the complaint.

      The factual basis for this lawsuit is as follows: Plaintiff resided in Belen, New Mexico. He worked at the Becker Street Bar, and lived behind the bar. His mail was delivered to the bar, along with mail addressed to other individuals. The mail was therefore available for examination by bar patrons and other bar employees, until Plaintiff picked it up. Plaintiff, a veteran, was a patient at the Veterans' Administration ("V.A.") hospital in Albuquerque, and was being treated for psychological difficulties. Defendant mailed a postcard to Plaintiff, which contained the greeting "Dear PTSD/Trauma Patient" and informed him he had an appointment scheduled for a certain date and time. This postcard was delivered to the bar, where it was examined by at least one other bar

employee and, possibly, by Plaintiff's roommate.[1] The postcard was then discussed by several individuals, and Plaintiff was allegedly subjected to ridicule for being "crazy." Plaintiff was allegedly humiliated, and had to quit his job and move. Subsequently, Plaintiff filed an administrative claim under the Federal Tort Claims Act ("FTCA"), which was denied. He then filed this lawsuit.

**Motion to Amend**

Plaintiff's original complaint is entitled "FTCA COMPLAINT FOR PERSONAL INJURY CAUSED BY INVASION OF PRIVACY BY PUBLICIZING PRIVATE INFORMATION." No specific cause of action is identified in the body of the complaint. Instead, Plaintiff merely recited the above facts and requested damages. The parties have litigated the case as one involving the tort of invasion of privacy only, although in the initial pretrial report Plaintiff notified Defendant that he intended to raise additional claims under the federal Privacy Act, 5 U.S.C. Section 552a, and the Veterans' Records Statute, 38 U.S.C. Section 5701 *et seq.* Plaintiff represented that these two claims were supported by the same facts as those providing the basis of the FTCA claim. Plaintiff has now filed a motion to amend his complaint, seeking to add the following claims: (1) medical malpractice, resulting from the disclosure of his private medical information; (2) a Privacy Act claim; and (3) a claim under the veterans' records statute. Defendant opposes the motion. Once a responsive pleading has been filed to the original complaint, as has occurred in this case, a motion to amend the complaint is addressed to this Court's discretion.

**Medical Malpractice:** Plaintiff maintains that medical malpractice occurred in this case because a psychiatrist authorized the mailing of postcards addressed to "PTSD/Trauma Clinic"

---

[1] For purposes of these motions, Defendant has accepted the allegation that "several" employees of the bar came into contact with the postcard. The evidence submitted by the parties indicates it is possible only one co-employee actually read the card. Since the issue has not been disputed by the parties at this point, the Court also assumes several co-employees read the postcard.

patients. Defendant argues that Plaintiff's motion to amend is untimely. In addition, Defendant maintains the motion is futile, because Plaintiff has failed to state a claim for medical malpractice. The Court agrees with the latter contention, and therefore need not address the timeliness issue with respect to this claim. *See Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 1999 WL 270398 (10th Cir. 1999) (leave to amend may be denied where amendment would be futile).

Plaintiff's theory is that a medical professional's disclosure of confidential information concerning a patient constitutes the tort of malpractice. It is true that some courts have analyzed such disclosures as malpractice cases. *See* Judy E. Zelin, *Annotation, Physician's Tort Liability for Unauthorized Disclosure of Confidential Information About Patient*, 48 ALR4th 668 (1986 and 2000 supplement); *cf. Berger v. Sonneland*, 1 P.3d 1187, 1191-92 (Wash.App. 2000) (injury resulting from physician's breach of confidence is "injury resulting from health care" actionable under Washington statute applying to all such injuries). Many other courts have chosen not to use this analytical framework. *See Annotation, supra*; *Tighe v. Ginsberg*, 540 N.Y.S.2d 99, 100-01 (1989). As the *Berger* court stated, most courts considering the issue have recognized a cause of action for breach of physician-patient confidentiality, but courts have been far from unanimous in identifying the theoretical basis for an actionable breach. *See* 1 P.3d at 1196. Suggested theories have included invasion of privacy, breach of implied contract, breach of fiduciary duty, breach of trust, medical malpractice, and several other possibilities. *Id.* One solution, adopted by a number of courts, has been to identify an independent tort of wrongful disclosure of confidential information, or breach of physician-patient confidentiality. *Id.* New Mexico has adopted this approach. *See Eckhardt v. Charter Hosp. of Albuquerque*, 953 P.2d 722, 727-28 (N.M.App. 1997).

In *Eckhardt,* the Court of Appeals addressed a situation in which a mental health professional disclosed confidential information to a patient's husband. The husband allegedly increased his abuse of the patient because he was angry about what the patient had revealed to her therapist. The Court of Appeals determined that the defendant owed the patient a duty of confidentiality, and appears to have extended such a duty to psychologists, social workers, mental health counselors, therapists, and their staffs. *Id.* Notably, the opinion made no mention of malpractice as the theoretical basis of the plaintiff's claim. Instead, the plaintiff's claim is described as a claim for wrongful disclosure of confidential information. *Id.* Furthermore, none of the usual requirements of a malpractice action, such as testimony by experts concerning the applicable standard of care in the community, were applied in the *Eckhardt* case.

The claim in this case is exactly the same as the claim in *Eckhardt* – Plaintiff contends Defendant had confidential information about his mental condition, and disclosed that information to an individual or individuals other than Plaintiff. In the Court's view, such an action would not be considered malpractice in New Mexico. Instead, it would be addressed as a possible wrongful disclosure of confidential information. Therefore, Plaintiff's request to amend his complaint to add a claim for professional malpractice will be denied, because the amendment would be futile.

To the extent it is necessary, however, Plaintiff will be allowed to amend his complaint to explicitly state a claim for wrongful disclosure of confidential information.[2] All of the facts supporting such a claim were pled in Plaintiff's original complaint, and these alleged facts have been the focus of the parties' discovery efforts. Although Plaintiff has characterized his claim as an

---

[2]Plaintiff's response brief to the motion to dismiss or for summary judgment argues that such a claim was sufficiently stated in the original complaint. However, the complaint did not identify a claim as "wrongful disclosure" or "breach of confidentiality." While it may not be necessary to formally amend the complaint to state such a cause of action, this discussion will ensure that Defendant has adequate notice of Plaintiff's exact claim prior to trial.

4

invasion-of-privacy claim, based on the publication of private information to others, it is apparent that the most appropriate analytical framework for his claim is the wrongful-disclosure tort discussed in *Eckhardt*. As in *Eckhardt*, Plaintiff was a patient of a mental-health-care facility; as in *Eckhardt*, confidential information obtained from Plaintiff was allegedly disclosed to others, without Plaintiff's consent;[3] and as in *Eckhardt*, Plaintiff allegedly suffered damages as a result. The nomenclature applied to a claim is not significant, as long as the essential facts of the claim are present. Furthermore, the Court does not perceive any prejudice to Defendant in allowing Plaintiff to specify that he is asserting a wrongful-disclosure-of-confidential-information claim.[4]

**Privacy Act:** Plaintiff wishes to amend his complaint to add a claim for violation of the federal Privacy Act, 5 U.S.C. Section 552(a) (1996). The Privacy Act prohibits federal agencies from disclosing information about an individual, absent written permission from the individual, with exceptions not pertinent here. § 552a(b). The Act also authorizes a civil action in federal court where a violation of the Act has occurred. § 552a(g). However, as Defendant points out, such a civil action must be filed within two years of the alleged violation. § 552a(g)(5). Plaintiff admittedly did not meet this deadline. To save his claim, he argues that the limitations period for the Privacy Act claim should be equitably tolled for the period during which he was exhausting his administrative

---

[3]The allegedly confidential information disclosed in this case is Plaintiff's status as a PTSD/Trauma Clinic patient. Plaintiff's argument is that identifying him as a patient of the clinic discloses the fact that he has been diagnosed as suffering a mental or emotional disorder, known as post-traumatic stress disorder. The Court expresses no opinion, at this time, as to the merits of this argument.

[4]To the extent Defendant might identify such prejudice, such as a need for discovery that could not have been foreseen, the Court will of course consider measures to alleviate the prejudice. The Court also notes that Defendant understandably has not argued that the elements of a wrongful-disclosure claim are not present here. Should Defendant believe there is no factual dispute and summary judgment should be granted on the claim, the Court will allow Defendant to file another motion for summary judgment despite the fact the deadline for such motions has passed.

remedies for his FTCA claim. He also contends the Privacy Act claim should relate back to the FTCA claim, because they both concern the same subject matter. In sum, he maintains that even though the Privacy Act does not require him to pursue any administrative remedy, the interests of judicial economy mandate that the limitations period be tolled while he pursued his required administrative procedure under a different statute.

Plaintiff's position is contrary to established law. In *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975), the Supreme Court held that the limitations period for a 42 U.S.C. Section 1981 claim should not be tolled during the pendency of administrative proceedings the plaintiff was required to follow for her Title VII claim. The Court so held even though the Title VII claim was based on the same facts as the Section 1981 claim. The Tenth Circuit followed *Johnson* in a case involving a Title VII claim and a 42 U.S.C. Section 1983 claim. *See Hansbury v. Regents of the Univ. of California*, 596 F.2d 944, 949 (10th Cir. 1979), *overruled on other grounds, Garcia v. Wilson*, 731 F.2d 640 (10th Cir. 1984). It is apparent that, where one statute does not require the exhaustion of administrative remedies, the limitations period for that statute will not be tolled while the plaintiff pursues remedies required by a different statute. One district court has applied this principle to a case similar to this one, involving an FTCA claim and a Privacy Act claim, refusing to toll the Privacy Act limitations period during the pendency of the plaintiff's FTCA administrative proceedings. *See Uhl v. Swanstrom*, 876 F.Supp. 1545, 1560-61 (N.D.Iowa 1995). Given *Johnson* and *Hansbury*, the Court agrees with the *Uhl* court's conclusion and will find the Privacy Act limitations period was not tolled in this case while Plaintiff pursued his FTCA administrative remedies. Therefore, Plaintiff's request to amend his complaint to add a Privacy Act claim will be denied, since such amendment would be futile.

**Veterans' Records Statute:**   This statute, 38 U.S.C. Section 5701 *et seq.*, protects the confidentiality of government records, including medical records, concerning veterans.  It obviously overlaps to a certain extent with the Privacy Act, and in fact specifically refers to the Privacy Act, stating that disclosures made pursuant to the statute shall be made in accordance with that Act.  § 5701(j).  Plaintiff contends the disclosure of the fact that he was a PTSD/Trauma Clinic patient violated this statute, and wishes to amend his complaint to bring a claim under the statute.  Defendant responds by arguing that there is no private right of action for damages under the veterans' records statute, and that even if such a right of action did exist Plaintiff has failed to state a valid claim under the statute.  In Plaintiff's reply, he failed to even mention the private-right-of-action issue, perhaps because the government raised it in one sentence without citation to authority.

Plaintiff's attempt to add a claim under the veterans' records statute has the potential to substantially delay the trial of this case, presently scheduled for next month.  Plaintiff did not file his motion to amend until a short time prior to the deadline for filing potentially dispositive motions such as a motion to dismiss or for summary judgment.  Unlike the wrongful-disclosure claim, this statutory claim is not one that has been apparent from the facts and the litigation history of this case.  Furthermore, there is a serious question as to whether an independent private right of action for damages is available under the statute.  The Court has found no case in which such an action was brought to successful conclusion.  There are a few cases, including a Tenth Circuit case, in which the claimed violation of the statute was alleged to constitute an invasion of privacy, and therefore a tort actionable under the FTCA.  *See Doe v. Stephens*, 851 F.2d 1457 (D.C.Cir. 1988); *Flowers v. United States*, 348 F.2d 910 (10th Cir. 1965).  If that is the correct course to follow, there is no need for Plaintiff to amend his complaint because he already has alleged an FTCA claim.  One other Circuit court, however, has addressed a damages claim for disclosure of records in violation of the statute,

7

without mentioning the FTCA. *Fitch v. Veterans Admin.*, 597 F.2d 1152 (8th Cir. 1979) (affirming dismissal of complaint on merits, holding no violation of statute occurred). It is important to note the statute's reference to, and incorporation of, the Privacy Act with respect to disclosures of information. Since the Privacy Act does provide for a private right of action, it may be that Congress intended that remedy to be the exclusive damages remedy for disclosures that violate the veterans' records statute. Whatever the answer may be to this issue, it is clear that if the parties and the court are required to address it, a substantial amount of research and briefing will be necessary.

Plaintiff knew about this potential claim in August 2000, when he indicated he planned to move to amend the complaint to add the claim. He also agreed to file such an amended complaint by October 1, 2000. However, Plaintiff did not elect to file his motion to amend to add this claim until late February, 2001, when discovery was virtually complete and the deadline for filing pre-trial motions had almost expired. Plaintiff has provided no explanation for his delay in filing the motion. An extension of all deadlines, as well as the trial, could very well be necessary if the Court were to allow the amendment. Furthermore, as noted above, Plaintiff has been following, whether inadvertently or deliberately, one established method of raising claims based on the statute, by pursuing his FTCA claim. The Court sees no reason to unduly complicate what appears, at present, to be a straightforward case, by allowing Plaintiff to add a claim that should have been raised months earlier. Undue delay is sufficient reason to deny leave to amend. See *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir.1998). The motion to amend to add this claim will therefore be denied.

**Motion to Dismiss or for Summary Judgment**

Defendant has moved to dismiss the claim raised in Plaintiff's original complaint, for invasion of privacy due to publication of confidential information. As discussed above, the most apt cause of

action in this case, given the alleged facts, is a claim for wrongful disclosure of confidential information. The Court must decide, however, whether the invasion-of-privacy claim should also be allowed to proceed.

The elements of this tort claim are as follows: (1) giving "publicity" to a matter concerning the private life of another, if the matter publicized (2) would be highly offensive to a reasonable person, and (3) is not of legitimate concern to the public. *Restatement (Second) of Torts* § 652D (1977). Defendant's main argument is that the "publicity" requirement of the invasion-of-privacy tort has not been met. According to Defendant, this requirement means the private information must have been disclosed to more than a few people. Defendant maintains that at best, only a few employees of the Becker Street Bar came into contact with the postcard, and argues this is not sufficient to constitute the "publicity" required to make the disclosure of information actionable. Plaintiff acknowledges the general rule applicable to the tort of public disclosure of private facts – that the private facts must be communicated to the public at large, or to many persons. However, he argues that an exception to that rule applies where there is a special relationship between the plaintiff and the third persons to whom the facts were communicated. In this case, according to Plaintiff, that special relationship is the co-worker relationship between himself and the other employees of the bar who saw the postcard.

The "special relationship" exception on which Plaintiff relies has been adopted in a number of jurisdictions. *See, e.g., Hill v. MCI WorldCom Communications*, 141 F.Supp.2d 1205, 1211-12 (S.D. Iowa 2001) (reviewing cases from other jurisdictions and adopting exception as a matter of Iowa law). Other jurisdictions appear to have rejected it, at least implicitly. *See Ozer v. Borquez*, 940 P.2d 371 (Colo. 1997) (reversing *Borquez v. Ozer*, 923 P.2d 166, in which Colorado Court of Appeals had applied special-relationship doctrine; Supreme Court opinion does not mention that

9

doctrine by name, but requires publication to general public rather than a few individuals).  New Mexico has not yet decided the issue.  *See Fernandez-Wells v. Beauvais*, 983 P.2d 1006, 1009 (N.M.App. 1999) (noting that some jurisdictions have adopted special-relationship doctrine, but failing to adopt or reject it as matter of New Mexico law).  The Court must therefore predict whether the New Mexico Supreme Court would adopt the special-relationship exception, as applied to the facts of this case, if faced with the question.  *See Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1298 (7th Cir. 1991) (in FTCA case, where there is no state authority on point, court must predict whether state's highest court would recognize tort of negligent supervision).

The Court finds Plaintiff has made an insufficient showing of the existence of a special relationship in this case, and the New Mexico Supreme Court would therefore not apply the exception.  It is not sufficient merely to show generally that the information was disclosed to a fellow employee or a few co-employees.  Instead, there must a showing that the co-employees were in a position to adversely impact Plaintiff's job security or conditions of employment, or were in a particularly close relationship with Plaintiff that was damaged by the revelation of private information, or were otherwise in a position such that the disclosure to them could cause Plaintiff special harm. *See, e.g., Doe v. Methodist Hosp.*, 690 N.E.2d 681, 693 (Ind. 1997) (disclosure to one co-worker not sufficient showing of special relationship, because there was no showing that the co-worker had a special relationship with the plaintiff such that the disclosure would be particularly damaging).  The fact that one of the co-employees was Plaintiff's roommate does not alter this conclusion, since there has been no evidence presented concerning the type of "roommate" relationship that existed.  If Plaintiff and his roommate simply shared a house or apartment, but did not otherwise have a significant relationship subject to special harm, there was no special relationship that could suffer particular harm from the disclosure of the information on the postcard.  *See id.*  Due to this lack of

evidence of a special relationship, the Court finds that, even if the New Mexico Supreme Court would adopt the special-relationship exception in an appropriate case, it would not do so in this case.

There are other problems with Plaintiff's invasion-of-privacy claim that counsel against allowing it to proceed in this case. As noted above, one of the elements of this tort is that the information disclosed to the public be "highly offensive to a reasonable person." In the Court's view, in this day and age it is unlikely that the simple disclosure that a person is a patient of a PTSD/Trauma Clinic, without more details concerning the person's condition, would be highly offensive to a reasonable person. It seems unlikely that being a "Trauma" patient would be highly offensive or even embarrassing to the average person. It is possible that it would be somewhat intrusive on a reasonable person's privacy; however, this tort is not designed to provide redress for all disclosures of information that an individual might wish to keep private. That is the reason for the qualifications on the tort, that the information must be publicized, not simply disclosed, and that the information must be highly offensive, not just a source of discomfort, to a reasonable person.[5] Absent disclosure of more information than the simple fact of Plaintiff's status as a patient at the clinic, the Court finds as a matter of law that the "highly offensive to a reasonable person" element of the tort has not been met.[6]

---

[5]The Court notes Plaintiff's suggestion that he is especially sensitive to matters such as this, and that Defendant must take Plaintiff as he is, under standard tort law. This is not, however, a standard tort; it has specific, restrictive elements, one of which is the reasonable-person requirement explicitly set out in the Restatement.

[6]The Court notes that the "highly offensive" standard apparently does not apply to the tort of wrongful disclosure of confidential information. This is presumably because the focus of the wrongful-disclosure tort is the breach of the confidential relationship, rather than the offensive nature of the information disclosed. *See generally* Alan B. Vickery, *Breach of Confidence: An Emerging Tort*, 82 Colum. L. Rev. 1426 (1982).

One final problem with Plaintiff's invasion-of-privacy claim is the fact that the disclosure to third parties in this case was clearly not intentional. Defendant sent the postcard to the address provided by Plaintiff, having no knowledge that the mail was subject to examination by third parties. In several jurisdictions, the tort of invasion of privacy by giving publicity to private information has been held to be an intentional tort. *See Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40, 54 (Tex. App. 2001) (declining to adopt a negligent-invasion-of-privacy cause of action); *Patrolman "X" v. City of Toledo*, 725 N.E.2d 291, 307 (Ohio App. 1999) (disclosure must be made intentionally, not negligently); *Lineberry v. State Farm Fire & Casualty Co.*, 885 F.Supp. 1095, 1098 (M.D.Tenn. 1995) (stating that this tort is an intentional tort). Other courts, even in some of these same jurisdictions, have disagreed. *See Doe* (noting that other Texas courts have recognized the tort of negligent invasion of privacy); *Yoder v. Ingersoll-Rand Co.*, 1998 WL 939885 (6th Cir.) (discussing Ohio law, noting a conflict in Ohio cases concerning question of whether disclosure of private information must be intentional to support the tort of public disclosure of private information). New Mexico has not yet addressed the issue. Given the other difficulties with Plaintiff's invasion-of-privacy claim, discussed above, it is not necessary for the Court to attempt to predict how the New Mexico Supreme Court would resolve the question. Defendant's motion to dismiss the invasion-of-privacy claim will be granted.

**Conclusion**

Based on the foregoing, Plaintiff will not be allowed to amend his complaint to add a Privacy Act or Veterans' Records Act claim. In addition, his cause of action for invasion of privacy by public disclosure of private information will be dismissed. He will be allowed to proceed to trial on his claim of wrongful disclosure of confidential information.

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Plaintiff's motion to amend his complaint (Doc. 28) will be granted in part and denied in part, and Defendant's motion to dismiss or for summary judgment (Doc. 30) will be granted.

Dated this 20th day of July, 2001.

_____
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Thomas E. Chism, Esq.
P.O. Box 27309
Albuquerque, New Mexico 87125

**For Defendant**:
Jan Elizabeth Mitchell, Esq.
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103